UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| BILLY BAGGETT, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) NO. 3:22-cv-00137 |
| SHERIFF JOHN FUSON, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Billy Baggett, while in pretrial detention at the Montgomery County Jail in Clarksville, Tennessee, filed a pro se civil complaint in state court (Doc. No. 1-1) against Montgomery County Sheriff John Fuson, the Montgomery County Jail, Southern Health Partners (SHP), and an SHP nurse, Mackenzie Skelton, RN. Defendants SHP and Skelton, with the consent of Defendants Fuson and Montgomery County Jail, removed the case to this Court and paid the filing fee. (Doc. Nos. 1, 1-2). All Defendants have answered the Complaint, and Plaintiff has provided notice of his release from jail and change of address. (Doc. No. 10).

The case is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

### I. INITIAL REVIEW

**A. Legal Standard**

Pursuant to 28 U.S.C. § 1915A, the Court must conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee,[1] and must dismiss the complaint or

---

[1] In addition to Sheriff Fuson, Defendants Skelton and SHP—which "contracts with Montgomery County to provide medical services to persons incarcerated in the Montgomery County Jail" (Doc. No. 6 at 3)—are

any portion thereof if it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. This initial assessment of whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Because Plaintiff is proceeding pro se, his pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

Plaintiff alleges violations of his federal constitutional rights by state actors. In doing so, he asserts a cause of action recognized in 42 U.S.C. § 1983, which authorizes suit against any

---

"government actors for purposes of § 1915A." Trusty v. Centurion Health Servs., No. 19-5872, 2020 WL 548225, at *1 (6th Cir. Jan. 7, 2020) (citing Hutchinson v. Wexford Health Servs., 638 F. App'x 930, 932 (11th Cir. 2016)).

2

person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a viable claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

B. Allegations and Claims

Plaintiff alleges that, after he was arrested on August 21, 2021 and booked into the Montgomery County Jail ("the Jail"), he explained to the "screening" nurse that he had had two orthopedic surgeries within the past 12 weeks, one on his shoulder and one on his leg, and was under continuing medical care prescribed by his surgeons and by his regular physician who provided pain management. (Doc. No. 1-1 at 5). He explained to the nurse that he was on a daily regimen of blood pressure medication, Oxycodone, and Xanax, to which the nurse replied, "You will not receive that medication at this Jail[,] it[']s not allowed by the Jail o[r] the medical provider." (Id.). Plaintiff was released eight days later but was again arrested on September 6, 2021. (Id.). Upon being screened by the nurse following this second arrest, Plaintiff reported that he was still under the medical care he had earlier described to the nurse, and that he had doctors' appointments scheduled for September 8 and 10, 2021. (Id.). Once again, the nurse informed him that he would not be provided the prescribed medications while at the Jail, nor would he receive the therapy he "needed to allow [his] shoulder and leg to heal." (Id. at 5–6).

Plaintiff alleges that he suffered constant pain due to the withholding of proper treatment at the Jail. (Id. at 6). He filed approximately 20 medical requests and grievances, alerting the staff that his recent surgical results "were sta[r]ting to tear apart." (Id. at 7). Plaintiff requested to see

3

the Jail's primary medical provider but "was told they were in the process of hiring one." (Id.). Though he continued to complain about his pain, he did not get to see the Jail medical provider, Nurse Practitioner Tolliver, until approximately two and one-half months had passed. (Id.).

Nurse Practitioner Tolliver informed Plaintiff that she was only authorized to prescribe medications that were on a list, and that the medications he had been prescribed by outside physicians were not on the list. (Id.). However, Tolliver ordered an x-ray of Plaintiff's right ankle and referred him for a follow up with his shoulder surgeon, Dr. Jones. (Id. at 8). At that follow up appointment, Dr. Jones ordered x-rays and an MRI which revealed that three shoulder tendons he had previously repaired were now "tor[n] completely . . . loose and . . . in worse shape than before the first surgery." (Id.). Dr. Jones advised that Plaintiff needed another surgery and medication to relieve the pain until that surgery could be performed, but the medication he wanted to prescribe was not on the Jail medical department's list of approved medications. (Id.). Plaintiff alleges that this list of medications "is based on no medical conditions at all [but] on the[ir] keeping cost[s] down," including "the cost of extra help in maintaining these medications and getting them to the prisoner that needs them." (Id. at 8, 11).

When Plaintiff requested further medical care for his surgically repaired leg, he "was told one thing at a time" by personnel at the Jail. (Id. at 8). Plaintiff claims that the lack of adequate medical care at the Jail has caused him unnecessary pain, significant injury, and the possibility of permanent damage to his shoulder and leg. (Id. at 8–9). He further clarifies that it was Defendant SHP that "would not allow [Tolliver] to p[re]scribe the proper medication," as the "list that is given to the doctors and [nurse practitioner] is made up by [SHP] making medical d[e]cisions based [not on] medical factor[s]" but "on cost saving." (Id. at 11). As relief, Plaintiff seeks an award of $25,000 in damages. (Id. at 12).

**C. Analysis**

Though Plaintiff invokes his Eighth Amendment right to be free from cruel and unusual punishment in the medical-care context, it is the Fourteenth Amendment that provides the basis for pretrial detainees to assert a Section 1983 claim of deliberate indifference to serious medical needs. Winkler v. Madison Cty., 893 F.3d 877, 890 (6th Cir. 2018) (quoting Phillips v. Roane Cnty., 534 F.3d 531, 539 (6th Cir. 2008)). This claim is comprised of an objective and a subjective component. "The objective component requires the plaintiff to show that the medical need at issue is 'sufficiently serious.'" Richmond v. Huq, 885 F.3d 928, 938 (6th Cir. 2018) (quoting Farmer, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id. at 939 (quoting Farmer, 511 U.S. at 837).

Presuming the truth of Plaintiff's allegation that he had been diagnosed as requiring pain management and other therapy following recent shoulder and leg surgeries, his need for such treatment soon after being booked into the Jail was sufficiently, objectively serious. "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." Rhinehart v. Scutt, 894 F.3d 721, 737 (6th Cir. 2018) (citations and internal quotation marks omitted). Plaintiff alleges that he was denied physical therapy and sufficient pain medication while at the Jail (where he was not seen by the Jail's medical provider for two and one-half months, reportedly due to a staff shortage), resulting in constant pain and "tearing" at the sites of his surgeries. These allegations establish the objective component of his claim for purposes of initial review.

5

Regarding the subjective component, Plaintiff alleges that the treatment decisions of the medical staff at the Jail were constrained by SHP's concern with cost-savings and its list of approved medications from which the staff could not vary, regardless of the prescriptions of Plaintiff's orthopedic surgeon. "[T]he Supreme Court [has] specifically indicated that the 'interruption of a prescribed plan of treatment could constitute a constitutional violation.'" Boretti v. Wiscomb, 930 F.2d 1150, 1154 (6th Cir. 1991) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). While "[a] prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care," Rhinehart, 894 F.3d at 742, "[f]ailure by a jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component" of deliberate indifference. Richmond, 885 F.3d at 939; see also Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004) (finding that delay in attending to an obvious medical need may constitute deliberate indifference where the delay is motivated by non-medical reasons). Further development of the facts may reveal that the treatment authorized by SHP was reasonable (if unsatisfactory to Plaintiff) in light of the orders and recommendations of Plaintiff's outside physicians. But for purposes of initial review, his allegations, liberally construed in the light most favorable to him, are sufficient to colorably claim that the execution of Defendant SHP's policies exposed him to an excessive risk of serious harm by preventing prescribed treatments for months, based solely on non-medical considerations. See Richmond, 885 F.3d at 940.

Accordingly, Plaintiff's claim of deliberate indifference to serious medical needs will be allowed to proceed. The Complaint makes clear that the moving force behind the constitutional deprivation alleged here is the corporate policy of SHP (see Doc. No. 1-1 at 11), not any action of Montgomery County Sheriff John Fuson or Montgomery County itself. See Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (Section 1983 liability for municipalities and for private corporations

performing state functions depends on existence of policy or custom that "was the moving force behind the deprivation of the plaintiff's rights") (quoting Miller v. Sanilac Cnty., 606 F.3d 240, 255 (6th Cir. 2010)). Because the Complaint does not attribute Plaintiff's injuries to any individual misconduct by Sheriff Fuson or any policy of Montgomery County, and because the Montgomery County Jail is merely a building and thus not subject to suit under Section 1983, Lyle v. Montgomery Cnty. Jail, No. 3:15-CV-0480, 2015 WL 1954350, at *2 (M.D. Tenn. Apr. 28, 2015), the case against these parties will be DISMISSED. The case will proceed against Defendant SHP.

Finally, despite being named as a Defendant in the Complaint's caption, Nurse Mackenzie Skelton is not elsewhere mentioned in the Complaint, nor is there any suggestion that she played any part in Plaintiff's medical treatment. Accordingly, the case against her will be DISMISSED. See Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints.").

## II. CONCLUSION

As explained above, the Court finds that Plaintiff states a nonfrivolous claim against Defendant SHP. This claim will proceed for further development, while all other claims and Defendants are hereby **DISMISSED**.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8